[Civ. No. 5110.   Fourth Dist.   Aug. 23, 1955.]

CULINARY ALLIANCE AND HOTEL SERVICE EM-
PLOYEES LOCAL UNION 402, Appellant, v. V. R.
BEASLEY et al., Respondents.

VERNE R. BEASLEY et al., Respondents, v. LOCAL JOINT
EXECUTIVE BOARD OF SAN DIEGO et al., Ap-
pellants.

Walter Wencke for Appellants.

Clifford L. Duke, Jr., for Respondents.

BARNARD, P. J.—This is an appeal from a judgment entered in two actions which were consolidated for trial.

V. R. Beasley and his wife operated a place in San Diego serving food and liquor. They had eight employees consisting of a bar manager, two bartenders, a kitchen manager and four waitresses. Prior to September 18, 1951, they operated under a collective bargaining contract with the local Joint Board, comprising Local Union 402 and Local Union 500. During the next two years they conducted the business in accordance with the terms of that contract, and the Joint Board collected dues from their employees and informed new employees they would have to join the union in order to work there. In September, 1953, the Joint Board removed the Union House Card from the establishment and told Beasley that his contract had been cancelled by Joint Board in 1951. That fact had not theretofore been brought to Beasley's attention. Beasley's Union House Card was not returned, but negotiations continued until about March 1, 1954. The only disagreement between the parties was over the terms of a health and welfare plan proposed by Joint Board, which was causing considerable controversy in the community throughout 1953.

In the fall of 1953, one Copelan participated in the organization of several independent employee unions, one being at the Coca Cola Bottling Company in San Bernardino. That union had been duly certified by the National Labor Relations Board as a bona fide labor organization, qualified to represent

the employees of the Coca Cola Bottling Company. In February, 1954, Copelan and another man organized a nonprofit corporation, which was incorporated on February 26, 1954, as "Employees' Collective Bargaining Association." This will be referred to as the "Association." As of March 29, 1954, it had about 100 members and had executed collective bargaining agreements on behalf of the employees of 12 separate and unrelated employers.

As of March 1, 1954, only two of Beasley's employees were members of the local unions and represented by Joint Board, although three others had prior to January been such members. On March 6, 1954, seven of Beasley's eight employees held a meeting at which five became members of the Association, and designated that organization as their exclusive bargaining representative. Another later joined, making six of the eight Beasley employees who were members of the Assotion. On the same day, March 6, a committee selected by the employees, consisting of two Beasley employees and Copelan as an officer of the Association, signed a contract with Beasley on behalf of all the employees of this establishment. On March 15, 1954, the Association filed a petition for certification with the National Labor Relations Board, which petition had not been acted on at the time of the trial. On March 19, 1954, Joint Board demanded of Beasley that he sign a contract with Joint Board. Beasley replied that he had already signed a contract with the Association on behalf of his employees. That same day, a picket line was established by Joint Board and one employee left, he being the only employee who was then a member of the local unions.

That same day, March 19, the first of these actions was filed by Local Union 402, naming Beasley and the Association as defendants. The complaint alleged, aside from formal matters, that Beasley "operates a saloon with kitchen"; that on October 10, 1953, Beasley informed this union that he would thereafter operate nonunion, and would no longer negotiate with the union; that prior to March 6, three named individuals were members of Local Union 402; that on March 6, Beasley "herded his employees" into a room above his saloon and told them they must join the Association if they desired to continue in his employ; that the Association is organized ostensibly to protect employees but actually is formed by employers to combat legitimate unions; that Beasley's acts, in refusing to bargain with the union and in requiring his employees to join the Association, were deliberately designed

to induce the employees to leave the union; that as a result of these acts these employees were forced to choose between retention of their employment and affiliation with their union, and the union was caused to lose three members as well as prospective members; and that, between November 18, 1951, and October 10, 1953, Beasley operated in compliance with the then extant collective bargaining agreement in the culinary industry, and in accordance with the contract in effect prior to November 18, 1951. The prayer was for an injunction restraining the defendants from coercing their employees to become members of Association as a condition of employment.

The defendant Beasley filed an answer, and also on March 20, 1952, filed the second of these actions praying for an injunction enjoining the Joint Board and the local unions from picketing this business, from obstructing or interfering with the conduct thereof, and from doing any act to prevent the Beasleys from obtaining supplies for use in the business. Local Unions 402 and 500 answered this complaint.

After a trial which began on March 29, 1954, the court found that each of the allegations of the complaint in the first action, as above summarized, was not true, with one exception. It was found that the last one, to the effect that Beasley had operated in compliance with the bargaining agreement common to the industry between November 18, 1951, and October 10, 1953, was true. The court also found that all of the allegations of the complaint in the second of these actions are true and, among other things, found that the Association is incorporated as a nonprofit corporation; that it is a labor organization existing solely for the purpose of dealing with employers concerning labor grievances, wages, hours of work, and conditions of employment on behalf of employees who are members of said corporation; that the Association has entered into a collective bargaining agreement with the Beasleys covering the wages, hours of work, and conditions of employment of their employees; that this agreement was executed on behalf of all of the employees employed by Beasley, and was ratified by a majority of such employees; that each of these employees voluntarily joined the Association, and neither the Beasleys nor their representatives had influenced any employee in any way in making this choice; that neither the Beasleys nor any employer of an employee member of the Association have contributed any finances to said corporation, nor have they committed any act which would in any way interfere with the affairs of said corpora-

tion, or any act which would constitute an attempt to dominate or control said corporation; that the picketing of this place of business by Joint Board and the local unions was for the purpose of compelling the Beasleys to execute a bargaining agreement with the local unions, and to recognize them as the exclusive bargaining agent for all of its employees; that this picketing resulted because of a dispute between the local unions and the Association as to which organization should have the exclusive right to represent Beasley's employees; that the Association has at all times since March 6, 1954, been the exclusive bargaining representative of all the employees employed by Beasley, and the Joint Board and local unions have at no time since said date been such exclusive bargaining representative; and that the local unions have acted in concert with other unions in order to injure the Beasleys' business, for the purpose of forcing them to recognize and bargain with Joint Board and the local unions as the exclusive agent of the Beasley employees. Judgment was entered restraining the Joint Board and the local unions from picketing or interfering with this business, as prayed for in the second of these actions. The Joint Board and the local unions have appealed from this judgment.

As the appellants state, the issue presented on this appeal is whether or not the Association was a bona fide labor organization and free from interference or domination by Beasley, within the meaning of section 1117 of the Labor Code, and free from interference by employers of labor within the meaning of section 923 of that code. The real question presented is whether the evidence sufficiently supports the court's findings to the effect that the Association was a bona fide labor organization; that neither the Beasleys nor any employer of any employee member of the Association have contributed any finances to said corporation, or have committed any act which would in any way interfere with the affairs of that corporation or committed any act which could constitute an attempt to dominate or control said corporation; and that each employee voluntarily joined the Association, uninfluenced in any way by the Beasleys or their representatives. The appellants, in effect, contend that the evidence does not support these findings for a number of reasons.

It is argued that since the by-laws of the Association forbid it to strike or picket, it is not a genuine labor organization because it is powerless to enforce any demands it may justly make. There was evidence that it was the purpose

of the Association to attempt to procure a contract between its employee members and their employers, that if a contract could not be agreed upon the Association had no desire to represent such employees, and that when a contract was signed with an employer it would attempt to make the employer live up to it, taking court action if necessary. While this may be one matter to be considered in determining whether or not a bona fide labor organization exists, the existence of such a provision in the by-laws is not conclusive to the contrary. As was said in *Suttin* v. *Unity Button Works,* 144 Misc. 784 [258 N.Y.S. 863], "It is praiseworthy that a union, having made a contract . . . should come into a court of equity and there seek protection rather than to resort to a strike to redress the wrong."

It is contended that this Association is absolutely controlled by "employer" directors. It is argued that under the by-law provisions of this Association the directors elect the officers; fill their own vacancies on the board of directors; determine their own compensation; hold so-called elections every two years; hold no general meetings; may amend and alter the by-laws to suit themselves; may interpret the by-laws to their own satisfaction; and pay no dues. It is then argued that under these unlimited powers the directors have absolute control since two of the three directors of the Association are "employers," with the result that these directors, are, in fact, "employer czars."

The Association was about a month old at the time of the trial. The articles of incorporation name three persons who are to act as directors until the selection of their successors. One of these was Copelan, who was an employee of the Coca Cola Bottling Company in San Bernardino. The other two were a man who operated a market in San Bernardino, and his wife who worked in the market. The size of this market does not appear. While this man was an employer in an unrelated business in another city he was in no sense an employer of the Beasley employees here involved, and it does not necessarily follow that he was such an employer as was contemplated by the words "the employer" found in section 1117 of the Labor Code. The by-laws of the Association do not support the charge that they give absolute control to the directors. Some of the things complained of are found in practically all such by-laws. These by-laws provide for biannual meetings of the members of the corporation; that special meetings may be called at any time by the

president, the majority of the board of directors, or upon written request of 25 per cent of the members; that notice must be given of the time and place of all such meetings; that the directors named in the articles are to serve until the next biannual meeting and until their successors are appointed; that any vacancy in the board shall be filled by the board of directors, the person appointed to serve until his successor has been duly elected; that any director may be removed by a two-thirds vote at any regular meeting, or any special meeting called for such purpose; that the directors shall receive no compensation for their services, provided that this shall not prevent a director from receiving compensation when authorized by the board for services rendered as an employee of the corporation; that the by-laws may be amended at any meeting of the members upon a three-fourths vote of the members present; that the board of directors shall likewise have authority to amend the by-laws, provided that in the event of any action taken by vote of the members, respecting any amendment, the action of the members shall be controlling over any action taken by the directors. This question of absolute control of the Association by its directors was, at best, one of fact for the court.

It is argued that the "check-off" provision in the Association contract with Beasley "assures the financial stability" of the Association. We are pointed to evidence that under their contract Beasley's employees signed an authorization for their employer to deduct their dues from their wages and remit such dues to the Association at the first pay period of each month. While this may "assure the financial stability" of the Association, no good reason is advanced or authority cited in support of the conclusion that this fact disqualifies an organization from being a bona fide "labor organization," within the meaning of section 1117 of the Labor Code. If such a rule were established as the law, we fear there would be many large and influential labor unions who would lose their standing as bona fide labor organizations.

It is argued that the "lack of negotiation" here is a further indication of employer domination. It is argued that there was no "give and take" negotiation because there was evidence that when the contract between the Association and Beasley's employees was entered into neither side asked for anything which the other side refused. There was evidence that the parties sat down and discussed wages, holidays, vaca-

tion pay and such matters, and that they came to an agreement. We know of no law requiring that something must be asked for and refused, in order to constitute a negotiation between parties over the terms of a contract.

It is argued that Beasley interfered with and supported the Association by permitting his employees to attend an organizational meeting during working hours, and performing their work for them while they were attending such meeting. The evidence is that the meeting was held at 6 p. m. because one shift was leaving and the other coming on and all would be available, and that the employees were asked to attend the meeting by one of the employees, who was manager of the kitchen. Assuming that this is one fact to be considered it is not, in itself, controlling.

It is argued that Beasley's interference on behalf of the Association is disclosed by the fact that he discharged two employees who refused to join the Association, one on March 6, 1954, and the other at sometime thereafter which is not disclosed by the record. One of these employees testified that Beasley told him on March 8 that he had not signed up with the Association, and he was through. We are pointed to no such evidence with respect to the other of these employees, and we have found none. On the other hand, Beasley denied having made the statements attributed to him and testified that these men were discharged for other reasons which are entirely sufficient. Nothing more than a conflict appears in this connection.

The arguments that Beasley's attorney represented the Association, and that Beasley's kitchen manager solicited and arranged the organizational meeting of the Association, require little consideration. The evidence with respect to these matters amply supports the findings made by the court.

It is argued that it is immaterial whether Beasley actually exercised domination since the more effective his control the less it was needed; and the desires of the employees are not relevant to the issue of domination, financing or interference. The question with respect to Beasley's domination and control was one of fact, and the evidence amply sustains the court's findings with respect to the matters coming within the scope of the pertinent sections of the Labor Code, and fully sustains the findings with respect to all of the material matters alleged in the complaint in the first of these actions. This is simply

a case where the appellants failed to sustain the burden of proof resting upon them.

Some contention is made that the Association is merely a "protection racket" because Beasley's employees did not know it was employer-controlled, did not know the terms of the contract they were entering into, and had never received a copy of the by-laws of the Association. There was ample evidence that the terms of the contract were explained to them; and evidence that some of them who had been members of Local 402 for years had never seen a copy of its by-laws.

Finally, it is argued that a similar "problem of determining whether an employer-dominated Association could be a bona fide labor union within the meaning of the Jurisdictional Strike Act" resulted in a different holding by a trial judge in San Bernardino County, in the case of *Roberts* v. *Carpenters Local 944.* That fact, if true, is not controlling on this appeal. The trial court was and this court is concerned with the evidence and record here presented.

██ It is only a company union "financed in whole or in part, interfered with, dominated or controlled by" *the employer* which is excluded from consideration under the Jurisdictional Strike Law. (*Voeltz* v. *Bakery etc. Union,* 40 Cal. 2d 382 [254 P.2d 553].) It may be said here as was said in that case: "We do not believe that the fact that a dispute existed between defendants and plaintiff before the association was formed and came into the picture, takes the case out of the act. . . . It may be inferred that what began as a dispute between employer and the union became a dispute between unions as to which should be exclusive bargaining agent."

The evidence sufficiently supports the findings made, and it cannot be held as a matter of law that the Association was not a bona fide labor organization, or that it was financed in whole or in part, interfered with, dominated or controlled by the Beasleys, the employer here in question.

The judgment is affirmed.

Mussell, J., and Shell, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.